EASTERN DIS.
*April,* 1841.

BERNARD'S
HEIRS
vs.
SOULE.

A sale of a stock of goods, although by notarial act, when shown to be in fraud of creditors, will not exempt them, even in the vendee's possession from *bona fide* attaching creditors of the vendor.

---

## BERNARD'S HEIRS vs. SOULÉ.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The husband and wife made a joint Will, and instituted each other sole and universal heir in case there was no children; with a proviso, that at the death of the survivor, any property or effects remaining should go to *their* heirs as legacies, in certain proportions: *Held,* that the wife *as the survivor* became the absolute owner of all their property and could alienate it. But if any remained unsold at her death, it went to both *their heirs.*

The rights of the heirs of either of the spouses, did not vest on the death of one of them, and could not until the *decease of the survivor;* they acquired only an eventual right or hope.

This is an action by the descendants of the brothers and sisters of André Bernard, living in France, who sue as his heirs and legal representatives to recover a lot of ground situated in Chartres street, New Orleans, and in the possession of the defendant, who claims it as owner.

The petitioners allege that a short time previous to the death

EASTERN DIS.
*April,* 1841.

BERNARD'S
HEIRS
*vs.*
SOULE.

of Bernard (in 1790,) he and his wife, Marie Françoise Robert, made their joint and reciprocal will, whereby they mutually bequeathed, in case of having no offspring, the whole of their estate to the one who should survive the other; with a proviso that after the death of the survivor, two thirds of the estate should go to the brothers and sisters of the said André Bernard; that he died in 1790 and his surviving widow took sole possession of all his estate, which she afterwards sold, and among this property was the lot of ground now claimed. They allege that she is dead and the property descends to them. They pray that they be decreed owners thereof, in virtue of the said Will, giving it to them at the death of the surviving spouse, &c.

The defendant claims the premises under a sale made by the Court of Probates of the estate of François B. Pacquelet, to whom it had been sold by the surviving widow of André Bernard in 1828. After her death, in 1834, this suit was instituted.

The plaintiffs claim under the joint Will of Bernard and wife, giving the whole of their estate to the survivor; with a proviso, that at the survivor's death, one third part of the property *which may be in existence at that period,* should descend as a legacy to the nephews of the wife, and the remaining two thirds to the brothers and sisters of the husband. The plaintiffs claim on the ground that the survivor had no authority to alienate the property, but only to enjoy, and at his or her decease it should be inherited in legacies as above claimed.

On these issues and grounds the cause was tried.

The district judge was of opinion the surviving wife, under the Will, had the power to alienate any of the property which she received under it. There was judgment for the defendant and the plaintiffs appealed.

*C. M. Conrad & Dennis,* for the plaintiffs and appellants.

*Soulé* in *propria persona* and appellee.

*Morphy, J.* delivered the opinion of the court. .

EASTERN DIS.
*April,* 1841.

BERNARD'S
HEIRS
*vs.*
SOULE.

The plaintiffs assert title to a piece of property in the possession of defendant, under a joint and reciprocal /will or testament of their ancestor, André Bernard, and his wife Marie Francisca Robert, bearing date the 13th September, 1790. By this will they institute each other sole and universal heir, with the proviso, that in the event of their having any children, this mutual disposition shall become null and void. They further provide, that at the period of the death of the survivor thus instituted, one third of such property as may then exist, shall go, by way of legacy, to certain persons therein named, the relations of the wife ; and they make a similar disposition on the happening of the same contingency of the remaining two thirds of the property in favor of the persons under whom the present plaintiffs claim ; they being the brothers and sisters of the husband.

The record shows that André Bernard died the same year this will was made; and his widow died in 1834. The latter on the 4th of March 1828, sold the property in dispute to Pacquelet, at whose death in 1832, it was purchased by defendant at a probate sale of his estate.

The clauses in the will, which give rise to this controversy, are in the following words, to wit:

"Y del remanente de nuestro bienes, dendas, &c., nos nombramos el uno pór otro por unico y universal heredero para que el que sobreviviere de nos lo goce con la bendicion de Dios ...... Y para en el caso de que se diserelva el matrimonio por muerte de alguno de nos sin tener hijos, queremos y es nuestra ultima voluntad que valga este como nuestra final disposicion, mutua, reciproca, &c. Con el buen entendido . que por muerto del sobreviviente la tercera parte de los bienes *que hubiere existentes en aquella epoca, se* le apliquen porvia de legado que *desde ahora* mutuamento le hacemos á Don Nicolas, Don Bartholomé, Don Fernando, y Doña Maria Durochée.

24                    CASES IN THE SUPREME COURT

EASTERN DIS.
*April*, 1841.

BERNARD'S
HEIRS
*vs.*
SOULE.

The husband
and wife made a
joint Will, and
instituted each
other sole and
universal heir
in case there
was no children;
with a proviso,
that at the death
of the survivor
any of the pro-
perty or effects
r e m a i n i n g
should go to
*their* heirs, as
legacies in cer-
tain propor-
tions: *Held,* that
the wife, *as the
survivor,* be-
came the abso-
lute owner of all
their property
and could alien-
ate it. But if
any remained
unsold at her
death it went to
both *their heirs.*

"*Desde ahora* para quando fallesca el sabreviviente de nos, legamos y donamos á Doña Maria Juana, Doña Catalina, Doña Magdelina, Doña Isabel y Doña Margarita Bernard, las dospartes de nuestros bienes," &c.

It is contended, on the part of plaintiffs, that this will contains a substitution which was permitted by the laws of the country in force at the death of André Bernard; that it conferred on their ancestors rights, which no subsequent legislation could affect; that although the survivor of the two spouses, Mrs. Bernard was instituted universal heir, she had only the usufruct or enjoyment of the property bequeathed; had no right to alienate it, but was bound to keep and transmit it to them; and this they say is the only construction which can satisfy the rule which requires effect to be given, if possible, to every part of a deed.

The construction appears to us at variance with the very terms of the instrument. From its whole context, it is clear that the intention of the two testators was to make in favor of each other the same disposition and bequest, and to place their respective heirs on the same footing. The expressions *de los bienes que hubiere existentes en aquella epoca,* although not repeated in the last clause, apply, in our opinion, to the two thirds of the property bequeathed to the relations of the husband, as well as to the third bequeathed to those of the wife. They leave no doubt in our minds that on the death of André Bernard, his widow became, as his universal heir, the absolute owner of the estate. She was not burthened with the obligation to keep and deliver it over to the persons named in the will; she had the free and absolute control of it, but if any part of it remained undisposed of at her death, then it was to have been divided according to the will; although the power to alienate is not expressly given, it can fairly be deduced from the above mentioned expressions in the will, coupled with the absence of any obligation or charge to preserve for and return the estate to the substituted heirs. This obligation or charge which limits the otherwise

EASTERN DIS.
April, 1841.

BERNARD'S
HEIRS
vs.
SOULÉ.

absolute ownership of an universal heir, is one of the essentials which characterize an ordinary gradual substitution. This will contains, we think, a disposition well known to the former laws of the country as the *fidei commissum cum liberâ*, or *fidei commissum de eo quod supererit*. Touillier informs us that dispositions of this kind were very frequent between man and wife in some parts of France; and do not in his opinion come within the purview of Article 896 of the Napoleon Code which abolishes substitutions, &c., *fidei commissa*, in nearly the same terms as Article 1507 of the Louisiana Code. Upon the whole it appears to us that the joint testators intended to prefer each other to all other persons and to divide whatever property might be left at the death of the survivor among their respective heirs.

The rights of the heirs of either of the spouses, did not vest on the death of one of them; and could not until the *decease of the survivor;* they acquired only an eventual right or hope.

But admitting, as it is contended, that this will contains a gradual substitution binding on the survivor by the law in force in 1790, we do not think that it would strengthen the case of the plaintiffs. The rights of the persons under whom they claim did not vest, as is supposed by their counsel, at the death of André Bernard; they acquired then only an eventual right, or rather a hope which did not descend to their heirs, the present plaintiffs.

Touillier, speaking of the rights of the substituted heirs which accrue only on the death of the gravatus *(grévé)* says:

"Ils n'ont avant ce tems aucun droit formé sur les biens grévés de restitution mais une simple espérance qu'ils ne peuvent transmettre à leurs héritiers, &c.

"La charge de rendre s'éteient si les appelés décèdent avant l'époque marquée pour la restitution or lorsqu'ils se trouvent à cette époque incapables de recueillir les biens." 5 Touillier Nos. 737, 738, 739. A substitution then is opened in favor of the substituted persons only by the death of the *gravatus ;* until that event takes place, they acquire nothing which can be considered as a right or property in them; *substitutio quæ non dùm competit extrà nostra bona est, (Law 42, D: de*

Eastern Dis.
*April,* 1841.

*acquiendo rerum dominio,)* These plaintiffs are the children and grand children of the persons named in the will who died long before widow Bernard. They cannot, therefore, exercise rights which never accrued to their ancestors. But even had any of the latter been living in 1834, it may well be questioned whether the Code of 1808, abolishing substitutions, and *fidei commissa* did not do away with the rights of all substituted heirs, which had not actually vested at the date of its promulgation. If from that time the plaintiffs' ancestors had no longer the capacity to take under a substitution, the property bequeathed remained in the hands of widow Bernard free from all charge or obligation, if any had ever existed, and she had the right of selling, as she did, in 1828. Merlin questions de droit, vol. 15, page 50, et seq.; Jurisprudence du Code Civil, vol. 4, page 16.

The judgment of the District Court is, therefore, affirmed with costs.