(52 South. 232.)

No. 17,792.

STEEG v. LEOPOLD WEIL BLDG. & IMP. CO.

(April 11, 1910.)

*(Syllabus by the Court.)*

1. ACTION (§ 1*)—GROUNDS OF ACTION.

Whatever may be the purpose of an individual in the adoption of a particular course, if neither the acts done nor the results accomplished are obnoxious to the law, they cannot be successfully attacked in the courts.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 1–9; Dec. Dig. § 1.*]

2. PERPETUITIES (§ 4*)—SUBSTITUTION—FIDEI COMMISSUM—RIGHTS OF FORCED HEIRS—EXCHANGE OF PROPERTY BY ANCESTOR.

A citizen may legally exchange part, or the whole, of the property of his estate for shares of stock in a corporation of which he is one of the organizers; and, if the charter imposes no limitation upon the power of the corporation to alienate such property, and imposes upon it no obligation to hold, or administer, the same for another, or to deliver it to another, save the obligation which it owes to its shareholders, such disposition does not create a prohibited substitution or fidei commissum, of which a forced heir, who receives his legitime in the stock of the corporation, can complain, even though there be certain provisions in the charter which render it more difficult than would ordinarily be the case for him to dispose of such stock.

[Ed. Note.—For other cases, see Perpetuities, Dec. Dig. § 4.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Mrs. Clara Weil Steeg against the Leopold Weil Building & Improvement Company, prosecuted by the executor and heirs of plaintiff upon her death. Judgment for plaintiff, and certain defendants appeal. Reversed and dismissed.

Benjamin Rice Forman, for appellants. W. S. Parkerson, for appellee Steeg. John Francis Tobin (John Chilton Devereux, of counsel), for appellee Weil. W. F. Brewer, for Caroline Heineman.

### Statement of the Case.

MONROE, J. Leopold Weil lived in New Orleans with Biena M. Weil, his wife and partner in community, by whom he was blessed with seven sons—Samuel, Solomon, Isaac, Jacob, William, Emanuel, and David—and two daughters—Clara (now wife of Aaron Steeg, and the plaintiff in this case) and Caroline (now wife of David Heineman). He also accumulated considerable money, the most of which he invested in real estate in this city, and on May 19, 1904, being then about 67 years of age, he and his seven sons declared, by notarial act, that they constituted themselves a corporation for the purposes and subject to the conditions set forth in the act, as follows:

"Article 1. The name * * * of this corporation shall be the Leopold Weil Building & Improvement Company. Its domicile shall be in the city of New Orleans, * * * and it shall have * * * existence for 99 years. * * * It may have, hold, purchase, sell, convey, lease, rent, pledge, or mortgage property, personal, movable, and immovable, sue and be sued, and may have a corporate seal.

"Art. 2. The objects and purposes for which

this corporation is organized and the nature of the business to be carried on by it are declared to be: To purchase, own, and improve real estate; to build, erect, sell, or lease houses and lands for dwellings and other purposes; to purchase, drain, reclaim, and improve lands and to build thereon and to render the same suitable for agricultural and residential purposes; and, generally, to engage in such business as may be necessary or incidental to the purposes herein set forth, and to do all and everything pertaining to, or in any way connected with. the purposes herein declared, including the power to borrow money and secure the same by mortgage or pledge on any of the property hereunder acquired, and to issue bonds or notes therefor."

Article 3 declares that the capital stock shall be $500,000, divided into shares of $100 each, to be fully paid for, when subscribed, in cash, services, or property. It further declares that the corporation may commence business when $100,000 of the stock shall have been subscribed; and further, as follows:

"Whenever any shareholder shall wish to sell his shares of stock, * * * the other shareholders shall have the privilege of buying, in proportion to the shares owned by them, at the price bona fide offered therefor, in writing, by an outsider and submitted to the board of directors; and, if no price is offered by an outsider, then the remaining shareholders shall have the privilege of buying the shares at the book value thereof with such allowance, if the corporation is earning a dividend, added thereto, and for the good will of the business, as the average net earning capacity of the stock, for the years preceding the sale, shall fairly entitle it to."

Article 4 vests the powers of the corporation in a board of five directors, who are required to be stockholders, and names Leopold, Samuel, Jacob, Emanuel, and Solomon Weil as the members to constitute the first board and to hold office until the last Monday in May, 1905, upon which date and annually thereafter directors are to be elected. The article also provides for the election by the directors of a president, vice president, and secretary-treasurer, and the appointment and employment of other officers and agents; and it names Leopold Weil as the first president, Jacob, vice president, and Emanuel,

secretary-treasurer. It also provides that the board shall appoint one of its members general manager, with power to act upon conditions to be imposed by the board.

Article 6 provides a method of liquidating the corporation at the expiration of the charter, or upon its dissolution prior to that time.

"Art. 7. No action of stockholders at any meeting shall be valid or binding unless stockholders representing a majority of all the stock shall be present or represented by proxy, and it shall require a vote of at least three-fourths of the stock so present or represented to elect directors, or to amend the charter, or to dissolve the corporation, or to do any other act at a stockholders' meeting."

The charter was signed by Leopold Weil as a subscriber for 1,333 shares of stock and by his seven sons as subscribers, each for one share, for which they paid in cash or otherwise. Two months later (on July 29, 1904) Leopold Weil sold and transferred to the corporation his real estate in New Orleans for the agreed price of $142,300, represented by 1,423 shares of its (the corporation's) stock, and thereafter, on February 20, 1905, he died, leaving a will whereby he divided his estate equally among his children, subject to the usufruct of their mother. The will was admitted to probate on the petition of the executors (Samuel and Jacob Weil), and an inventory was made, showing assets to the amount of $239,424.10, of which there were 1,516 shares of stock in the defendant company, appraised at $152,500. Thereafter the executors filed an account, showing the net value of the estate, after deducting $16,-492.02 of liabilities, to be $222,932.08, of which one half ($111,466.04) went to the widow and the other half to the heirs, subject to the usufruct of the widow. The executors then filed a petition praying that the widow and heirs be put in possession, and they discharged, and there was judgment accordingly on February 27, 1907. On March 19th following Mrs. (widow) Weil, by notarial act, donated to her nine children each 50 shares

of the stock of the defendant company, and expressly exempted the same from collation. Mrs. Steeg (plaintiff herein) on May 20th appointed her husband her agent to represent her in all matters relating to the stock so received by her, and during the same month, and in May, 1908, he attended meetings of the stockholders of the defendant company and voted said stock.

Mrs. Weil died on October 19, 1908, and her succession was opened some 10 days later. An inventory taken on November 30th showed assets to the value of $23,370.48, of which $13,720 was represented by stock in the defendant company. The inventory was not filed in court until January 4, 1909, when it was ordered to be approved and homologated. In the meanwhile, on December 24, 1908, Mrs. Steeg, authorized by her husband, instituted this suit, the prayer of the petition (and amended petition) in which, after asking that the defendant company and plaintiff's coheirs individually be cited, further asks that there be judgment—

"decreeing the said Leopold Weil Building & Improvement Company to be an illegal organization, a trust, a prohibited substitution, and a fidei commissum, absolutely null, void, and of no effect, and decreeing your petitioner and her coheirs, hereinabove named, to be the owners, in indivision, of all the property hereinabove described; and petitioner prays that experts be appointed to determine whether or not the property can be divided in kind; that an inventory be taken by William Renaudin, assisted by appraisers, and that the said * * * property be sold at public auction by William Kernaghan, auctioneer, after due and legal advertisements, in accordance with law; that the said auctioneer be authorized to sign and execute the necessary acts of sale; * * * and that all the parties hereinabove named be referred to William Renaudin, notary public, for the purpose of effecting a partition of the proceeds of the same."

An order appointing experts to determine whether the property (being the real estate standing in the name of the defendant company) is divisible in kind, and for an inventory and appraisement appears to have been made on the filing of the petition and ex

parte, and thereafter David Weil and Caroline Weil (wife of A. D. Heineman) answered practically concurring in the averments and prayer of the petition.

The corporation and the other heirs excepted: (1) That the corporation alone is the proper party to stand in judgment in an action to annul its charter, and that, until the charter is annulled, no action lies to partition the corporate property among its stockholders; (2) that plaintiffs have no capacity to stand in judgment in a suit to annul the charter of the company, the Attorney General alone being authorized to that effect; (3) that the petition discloses no cause of action, neither the charter of the corporation nor the sale by Leopold Weil disclosing any substitution or fidei commissum; (4) that plaintiff is estopped by having signed the inventory in the succession of Leopold Weil, in which the corporation here attacked is recognized, and by having received 50 shares of the stock of said corporation from her mother, and voted the same through her husband.

The exceptions thus filed were referred to the merits, save that in which it is said that the Attorney General alone can bring a suit such as this, which was overruled. And the defendants last mentioned then answered, admitting the establishment of the corporation, affirming its validity, and reiterating the matters of defense set up in the exceptions.

On the trial, in addition to the facts which have been stated, it was shown that at the time of the establishment of the corporation Leopold Weil owned other property (such as stocks, bonds, notes, cash, etc.) besides the real estate in question; that, after his death, his son, Jacob, became president of the corporation, Samuel, vice president, Emanuel, secretary-treasurer, and Solomon, general manager; that the total amount paid them as salaries has been $4,000 a year; that the total net income of the company for the years 1905, 1906, 1907, and

1908 was $52,038.70; that no dividends were declared, but that the profits or income had. been reinvested in real estate. Samuel, Jacob, Solomon, and Emanuel Weil were examined by plaintiff (as upon cross-examination, under the act of 1908) upon the question whether it was not the purpose of their father to tie up the real estate turned over by him to the company and the revenues therefrom during the life of the company, and one or two of them testified that his idea was not to declare dividends "that the surplus should always go towards buying realty, and, of course, the stockholdings would increase the value of the stock." The testimony is, however, not (to our minds) conclusive to the effect that he expected his heirs to hold the property for 99 years without using or enjoying it, and then to turn it over to their successors; such expectation being inconsistent with the power conferred by the charter of the company. The judge of the district court, however, reached the conclusion that plaintiff was entitled to the judgment prayed for, and he accordingly decreed the dissolution or nonexistence of the corporation, recognized the Weil heirs (who are the only stockholders) as the owners of the property standing in its name, and ordered that said property be sold to effect a partition, and that the parties be referred to a notary to consummate the same. The corporation and the other defendants, save David Weil, Mrs. Heineman, and the executor and heirs of Mrs. Steeg (who were made parties plaintiff in consequence of her death) have appealed.

### Opinion.

The propositions upon which plaintiff relies, as stated in the petition, are substantially as follows:

That Leopold Weil turned over all the property which had been acquired in community to the Leopold Weil Building & Improvement Company (hereafter called the company) in exchange for certain shares of the capital stock of the company which had been organized solely for the purposes of taking over and holding the same and of acquiring other property with the revenues thereof, and that, after his death, the company, solely with said revenues, acquired other real estate, though no property of that description was found in the estates of the decedent or his widow.

That said company "never had any legal existence, in so far as it attempts to hold the property of said estates."

"That the same is inconsistent with the Constitution and laws of the state of Louisiana, in that it was incorporated with the intention of avoiding the inheritance laws and with the manifest purpose of holding said property in perpetuity, in trust, to prevent a partition thereof among the heirs, and to keep the same out of commerce. That, for the reasons above set forth, the said corporation is a trust, a prohibited substitution, and a fidei commissum, utterly null, void, and of no effect. That, by reason of the fact that the said * * * company is a prohibited substitution, * * * and that it never had any legal existence, all of the titles of the real estate held by it, as hereinbefore set forth, are in truth and reality the property of the estates of the said Leopold Weil and the said Biena M. Weil, and is now owned, in indivision, subject to the laws of this state, by petitioner and her coheirs. * * * That said estate, though listed by said company at less than $250,000, is * * * worth in excess of $400,000. Petitioner alleges that, by reason of the said illegal corporation holding the said property of the estates of her said father and mother, she has no voice in the control and management thereof, can derive no benefit therefrom, and is compelled, in defiance of the law of the state, and against her will, to hold the same in indivision with her coheirs. That she is unwilling so to hold it, and desires a partition thereof, and of any and all other property, real or personal, which may belong to said estates. Wherefore, the premises considered, petitioner prays," etc.

As the inventory of Leopold Weil's succession showed assets to the value of $239,424.10, of which but $152,500 consisted of stock in the company, and as the inventory in Mrs. Weil's succession showed assets to the value of $23,370.48, of which but $13,720 consisted of such stock, it is evident that all the property of the community was not put into the company.

Considering carefully the other allegations of plaintiff's petition, we find that the existence of the company is not attacked because of the nonobservance of any statutory requirement for its establishment, or because its declared purpose is to buy, own, improve, and sell real estate as contradistinguished from other property.

Stripped of matters of amplification, the grounds of attack are that the company was formed for the purpose of avoiding the inheritance laws by the establishment of a trust which will hold the property acquired from Leopold Weil in perpetuity, keep it out of commerce, and prevent its partition among his heirs, and that the creation of a company for such a purpose and the conveyance to it of the property in question amounts to a prohibited substitution and fidei commissum, and hence that the whole scheme is illegal and void.

It is, however, an essential requisite to a prohibited substitution that the property conveyed to the first recipient shall be held by him without the capacity to alienate it, and thus be tied up in his hands during his life, and that the ultimate beneficiary, to whom it is to be delivered by the first recipient, is to come into the enjoyment of it only upon the death of such first recipient. The fidei commissum differs from the prohibited substitution, in that in such case the charge imposed upon the first recipient is to be executed during his life, and he holds and administers the property as trustee for the beneficiary, in whom alone the title vests. Beaulieu v. Ternoir, 5 La. Ann. 480; Succession of Michon, 30 La. Ann. 218; In re Billis' Will, 122 La. Ann. 543, 544, 47 South. 884.

In the instant case a corporation was created, the object and purposes of which, as declared in its charter, are "to purchase, own, improve, and sell real estate; to build, erect, sell, or rent, or lease, houses and lands; * * * to purchase, drain, reclaim, and improve lands, and to build thereon, and to render the same suitable for agricultural or residential purposes; and, generally, to engage in such business as may be necessary or incidental to the purposes herein set forth." Being purely a creature of the law, and having no existence beyond the law of its creation, the company cannot in the nature of things have any purpose other than those declared in that law; and, whilst its policy, as controlled by the natural persons who have administered its affairs, seems, thus far, to have been rather to buy real estate than to sell it, and to reinvest its profits, rather than distribute them among the shareholders, that fact, we imagine, is apart from the question under consideration, since the company cannot be held on that account to have been created for the purpose of tying up Leopold Weil's estate any more than could a bank, in the stock of which he may have invested other funds, should the directors conclude to accumulate a surplus rather than declare dividends. Moreover, though Leopold Weil (and the other incorporators as well) may have been inspired by the motive which plaintiff ascribes to them, no limitation or obligations were, or could have been, imposed upon the corporation, save those which are contained in the charter, and, as the charter contains none which would prevent it from alienating the property acquired from Leopold Weil or which require it to administer that property for the benefit of, or to turn it over to, any one, save those who, as stockholders administering the corporation, are already in possession of it, it cannot be said that any substitution or fidei commissum has been created within the meaning of the law prohibiting trusts of that character, unless we should be willing to go further, and say that all property owned by corporations is held in trust within the meaning of that law, in which case we should be obliged to read out of the

books all the law authorizing the establishment of corporations. It is said, upon the other hand, that the maintenance of the corporation and of the disposition of property here attacked will be tantamount to the repeal of the law regulating the devolution of property by inheritance, but we do not so regard it. It has always been the law here, as it has been elsewhere, that a citizen may acquire stock in a corporation, and may pay for it in cash or in property, in either case exchanging one species of property for another species, which he prefers, and which, like that with which he parts, will in the event of his death pass to his heirs. Formerly a citizen engaged in mercantile business necessarily placed his whole fortune at risk, unless he became a partner in commendam, in which event he was denied the privilege of handling his own investment. More than that, by the express terms of the law (which remains unrepealed), he was authorized to stipulate in a contract of partnership that the relation should continue between his heirs and his surviving partner or partners, so that, not only was, and is, it possible for the inheritance of an heir to be subjected to the control of others, but it was, and is, possible for him to incur liability beyond the value of his inheritance through the acts of those exercising such control. Civ. Code, art. 2882. Of course, in the case of a major heir, the difficulty may be readily solved by his renouncing the succession. In the case of a minor heir, no solution seems to suggest itself. In these latter days (since the passage of Act No. 36, of 1888), if one has the whole or part of his fortune invested in merchandise, he may convert his mercantile house into a corporation, and, exchanging his merchandise for shares of the corporate stock, acquire the exemption from further liability which was formerly accorded only to the partner in commendam, without, at the same time, sacrificing the right to conduct the business in which his means are thus invested; and his heirs may inherit his stock, as they would have inherited his merchandise, without incurring the liability resulting from an inherited partnership, and without the necessity of a liquidation of the business. It is, however, argued by the learned counsel for plaintiff (in effect) that the charter of the defendant company, regarded as a contract between the incorporators, is obnoxious to the objections stated in the petition by reason of the peculiar provisions regulating the alienation of its stock, whereby (as it is said) the minority are deprived of the right to either enjoy or to part with their property. We do not, however, concur in the conclusion reached by the learned counsel as to the extent of the deprivation of which the plaintiff complains. If the business of the corporation is profitable, and the withholding of the profits from the shareholders is unreasonable, we imagine (though the courts are rather disinclined to interfere in such matters) that a remedy might be found. On the other hand, if plaintiffs desire to sell their stock, and are unable to obtain a bona fide offer in writing from an outsider, as a basis for their call of the option which the charter gives to their fellow stockholders, they have the right to demand that the latter take the stock at the book value, and, in default of their so doing, plaintiffs may sell it to whom they please, and at what price they please; and by "book value" we understand, not any arbitrary or fictitious value that may be entered on the books of the company, but the value as predicated upon the market value of the assets of the company, after deducting its liabilities. It may be conceded that it would perhaps be more difficult to find a market for the stock of the minority shareholders in the defendant company than for some other stocks, but the same thing may be said of the stock of many other corporations, controlled by a few individuals,

and the same difficulty might exist if the minority were free to sell to whom they pleased, without first offering their stock to the majority. Beyond that, as we understand the situation, there are practically three plaintiffs in this case who constitute the complaining minority, to wit, the heirs of Mrs. Steeg (who are the titular plaintiffs), Mrs. Heineman, and David Weil, and they each own one-ninth of the stock, or a total, among the three, of one-third, from which it follows that they have a very potent voice in the administration of the company's affairs, since under article 7 of the charter it requires at least three-fourths of the stock to elect the directors, or to do any other act at a stockholders' meeting. In conclusion it must be remembered that the charter provisions, of which plaintiffs complain, were agreed upon by the incorporators of the company, who were sui juris, were dealing with their own property, and who, subject to those provisions, converted that property into the stock of the company. The provisions so agreed upon impose the same obligations upon all the stockholders, and, though somewhat out of the ordinary, are by no means unheard of, and, so far as we can see, are not intrinsically illegal; the illegality, if any there be, consisting of the (alleged) fact that they are part of a general scheme for the accomplishment of the illegal purpose to tie up the legitime of the forced heirs of Leopold Weil and his wife. If, however, Leopold Weil and those of his heirs who participated with him in the framing of those provisions were actuated by such purpose, the means adopted by them were, and are, wholly inadequate for its accomplishment, since he died within a few months thereafter, leaving his entire estate under the control of his widow and heirs, so that, whilst he may have advised, and during his life may have enforced, the policy of buying property and holding it, they were left free, at his death, to do as they pleased in that respect. On the other hand, the only evidence that his scheme was devised particularly to the prejudice of the complaining minority is to be found in the fact that none of them are officers of the defendant company, and in a few words which escaped one of the witnesses, from which it might be inferred that the sons-in-law are not altogether acceptable to the Weil family. So far as the administration of the company is concerned, there is no complaint, the salaries paid the officers are reasonable, and the real estate, which was put into the company at a valuation of $142,300, is alleged in the petition to be now worth in excess of $400,000, and some $40,000 has been expended in the purchase of other property. The idea, however, that, because the life of the company is fixed at 99 years, the majority of the shareholders would continue (even if they were not interfered with) during their lives to pursue the policy of buying and holding, and reinvesting the revenues only to continue to buy and hold, appears to us to attribute to them a capacity for sacrificing themselves for the benefit of posterity which our information does not warrant us in assuming that they possess.

We have abstained from the consideration of several questions which are discussed in the briefs of the counsel for plaintiffs, for the reason that we do not find them presented in the pleadings, and the briefs themselves confirm us in the view that they were not intended to be so presented. Thus, in the original brief, after having recapitulated the points to which we have referred, the counsel says:

"It seems to the writer that the true test, *the sole test*, in this case, is involved in the question: *Could Leopold Weil by will have tied up his property in the way in which it is tied up here; could he by will have prevented a partition of the real estate among his heirs?*" (Italics by the counsel.)

And the conclusion of his supplemental brief reads as follows:

"It is demonstrated, therefore, that the intention was to organize a corporation which would take and hold intact this estate, and pass it on, from generation to generation, to be controlled and ordered for all time exactly as old man Weil wished. He could not accomplish such a purpose by will. Can such an attempt to evade the law be successful? Can he establish in Louisiana a tenure and disposition of property unknown to its law, indeed, hostile to, and prohibited by, the spirit and letter of her enactments on the subject?"

From the petition itself, and from the argument in support of the case therein presented, our conclusion has been that we were called on to decide the questions which we have considered, and none other; and, for the reasons which have been given, our conclusion upon those questions is that, whatever may have been the purpose of Leopold Weil in exchanging his real estate for shares of stock in the defendant company, neither the course pursued by him nor the results accomplished are obnoxious to the law prohibiting substitutions and fidei commissa; and hence that plaintiffs have failed to make out their case.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the defendants, rejecting the demands of the plaintiffs, and dismissing this suit at their cost in both courts.