(81 South. 457)

No. 21994.

In re COURTIN.

(March 31, 1919.)

*(Syllabus by Editorial Staff.)*

1. WILLS ⟨⇒554—"SUBSTITUTION."

"Substitution," with respect to wills, and in view of Civ. Code, art. 1520, prohibiting substitution, is the putting of one person in the place of another so that he may, in default of ability in the former, or after him, have the benefit of the devise or legacy, particularly the act of testator in naming a second devisee or legatee who is to take the bequest on failure of the original devisee or legatee, or after him.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Substitution.]

2. PERPETUITIES ⟨⇒4(19) — "FIDEI COMMISSUM"—NATURE AND VALIDITY.

A "fidei commissum," with respect to wills, and in view of Civ. Code, art. 1520, prohibiting fidei commissa, is a species of trust, being a gift of property to a person accompanied by a request or direction of donor that the recipient will transfer it to another who is not capable of taking under the will or gift, but must receive the thing bequeathed from the hands of the first legatee or donee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fidei Commissum.]

3. PERPETUITIES ⟨⇒4(19) — SUBSTITUTIONS AND FIDEI COMMISSA — CONSTRUCTION OF STATUTE.

To be amenable to Civ. Code, art. 1520, prohibiting substitutions and fidei commissa, the bequest must be to the donee, and on his death, or at the end of a fixed and determinable time, to a third person, which, if permissible beyond the first donee, would give testator power to tie up the title ad infinitum; or the bequest must be made to one in trust for another with request or direction to preserve and return it to such other, which would permit donor to do indirectly what he could not do directly.

4. PERPETUITIES ⟨⇒4(19) — SUBSTITUTIONS AND FIDEI COMMISSA—CONSTRUCTION.

A will otherwise valid as to special legacies and granting of a usufruct in favor of testator's sister, providing that, as interest of total amount converted into cash and put at interest would be insufficient for support of sister, $40 per month should be withdrawn for her maintenance, and on her death before exhaustion of funds the balance should go to a niece, was not repugnant to Civ. Code, art. 1520, forbidding substitutions and fidei commissa, in view of Rev. Civ. Code, art. 1521, not prohibiting "vulgar substitution."

5. PERPETUITIES ⟨⇒4(19) — USUFRUCT AND NAKED OWNERSHIP.

A testator may give the usufruct to one person and the naked ownership to another without violating Civ. Code, art. 1520, forbidding substitutions and fidei commissa, in view of Rev. Civ. Code, art. 1522.

6. TRUSTS ⟨⇒11(1)—VALIDITY—USUFRUCTUARY—TERM OF OFFICE.

A will providing that, as the interest of a usufruct in the total amount would be insufficient for the support of testator's sister, $40 per month might be withdrawn for her maintenance, and that on her death before exhaustion of funds the balance should go to testator's niece, was not obligatory as requiring executor to remain in office to collect and invest the funds, and to pay over to usufructuary during her lifetime and after her death the remainder to the niece, in view of Rev. Civ. Code, arts. 533, 534, 536, 549, and article 557 et seq., and article 563, prescribing the rights and obligations of the usufructuary.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

In the matter of the succession of Joseph A. Courtin. After the executor had filed his final account and a judgment sending Miss Marie Emma Courtin and Mrs. May or Mary Willoz into possession as usufructuary and residuary legatees, respectively, Mrs. Stephen Garidel and Louis J. Courtin, Jr., heirs of the deceased, brought an action attacking the will. Judgment in favor of Mrs. May or Mary Sarrazin, wife of John Willoz, and Mrs. Marie Adele Courtin, widow of Peter E. Sarrazin, individually and as administratrix of Miss Courtin, declaring the will valid and maintaining it, and plaintiffs appeal. Affirmed.

Roger Meunier, of New Orleans, for appellants Garidel and others.

Oscar Schreiber, of New Orleans, for appellees Mrs. May Sarrazin and Mrs. Marie Adele Courtin.

DAWKINS, J. Joseph A. Courtin died testate, leaving as his last will and testament the following document, to wit:

"Olographic will dated N. O. Aug. 1, 1911.
"This is my last will and testament.
"I declare that I am of sound mind.
"After my funeral expenses shall have been paid, I leave and bequeath to my friend, Samuel Moril as a mark of friendship my hunting and fishing paraphernalia.
"To Dr. Tudery one hundred dollars.
"To my sister Mary Emma Courtin the usufruct of all I die possessed of.
"It is my wish that the amount derived from the sale of the property No. 2217–19 Nth. Villere street, together with the amount derived from the execution of the judgment I hold against my brother Jules A. Courtin, constituting my share of said property, shall be placed at interest with the other funds found in the banks.
"As the interest in the total amount will not be sufficient for her support, I authorize the withdrawal of forty dollars per month for her maintenance.
"Should she die before the funds are exhausted, the balance to go to my niece and godchild May Willoz.
"I appoint my friend Emile Le Blanc, as my administrator, with full seizin, and without bond. In case he be unable to serve, then the United States depository."

This document was admitted to probate, and Le Blanc was duly qualified as executor. Question having arisen as to the exact meaning of certain provisions of the will, Miss Emma Courtin and Mrs. John Willoz, legatees under the will, entered into an agreement whereby it was stipulated that the former should receive all of the rents and interest accruing to the estate since the death of the testator, and $40 per month additional; that the succession should be finally settled on that basis, and that the usufructuary, Miss Emma Courtin, should be placed in possession without bond.

The executor having filed his final account, Miss Courtin and Mrs. Willoz petitioned the court to send them into possession of the estate as usufructuary and residuary legatee, respectively; and, accordingly, there was judgment sending them into possession as prayed for.

Thereafter, on September 14, 1914, Mrs. Mamie Theressa Courtin and husband, Stephen Garidel, residing in New Orleans, and Louis J. Courtin, Jr., residing in Beaumont, Tex., filed suit attacking said will, and alleged that at his death, on March 31, 1912, deceased left no ascendants or descendants; that they, together with George A. Courtin, a brother, Miss Marie Emma Courtin and Mrs. Marie Adele Courtin, widow of Pierre E. Sarrazin, sisters, were decedent's sole surviving collateral heirs; that Miss Marie Emma Courtin died intestate during the year 1914, leaving petitioners and the other heirs of Joseph A. Courtin above named as her sole heirs at law; that George A. Courtin died intestate on August 4, 1914, leaving as his sole heirs eight children, all of age. Petitioners then alleged that the clauses in said purported last will and testament wherein it attempts to make Miss Marie Emma Courtin usufructuary of the estate, directs the sale of the real property, the collection of the judgment against the brother of the decedent, the depositing of the funds in bank, and authorizes the withdrawal of $40 per month for the maintenance of the said Miss Marie Emma Courtin, are illegal, null, void, and of no effect; that the same constitute an attempt to create a fidei commissum, and to introduce a tenure of property unknown to our laws; that thereunder no disposition is made of the ownership of the money therein referred to, except, perhaps, the donation of $40 per month during the lifetime of said Miss Marie Emma Courtin; that an attempt is made to extend the authority of the executor and term of his administration beyond the limits prescribed by law; that said will

contains a prohibited substitution; and that the order admitting said will to probate, in so far as said clauses are concerned, is illegal, null, and void.

All of the other collateral heirs of the decedent were made parties defendant, and petitioners prayed that the assailed clauses be held void and of no effect, and that they, with the defendants, be recognized as the sole heirs at law of the said Joseph A. Courtin, and entitled to the residue of the estate remaining after the discharge of the special legacies.

There was judgment below in favor of Mrs. May or Mary Sarrazin, wife of John Willoz, and Mrs. Marie Adele Courtin, widow of Peter E. Sarrazin, individually and as administratrix of the estate of Miss Emma Marie Courtin, declaring said will legal and valid, and maintaining same in its entirety.

Plaintiffs have appealed.

## Opinion.

The issues in this case are entirely of law.

Plaintiffs contend that the provision in the will in which the testator directs that, inasmuch as the interest on the funds of his estate will not be sufficient to support the usufructuary, $40 per month be withdrawn for that purpose, creates a fidei commissum or fiduciary bequest, which is prohibited by the provisions of article 1520 of the Revised Civil Code, and is a prohibited substitution, likewise denounced by the same article.

If the following clauses were eliminated from the testament, there can be but little question that it would leave a perfectly valid will as to the other special legacies and the granting of the usufruct in favor of Miss Marie Emma Courtin, but would leave the naked ownership of the estate to be inherited by the lawful heirs of the deceased, instead of giving it to Mrs. Willoz, as was the apparent intention of the testator. The provisions referred to are:

"As the interest in the total amount will not be sufficient for her support, I authorize the withdrawal of forty dollars per month for maintenance.

"Should she die before the funds are exhausted, the balance to go to my niece and godchild, May Willoz."

[1, 2] It becomes necessary therefore, for us to interpret these two clauses, and to determine their validity when tested by the provisions of article 1520 of the Code, which we quote as follows:

"Substitutions and fidei commissa are and remain prohibited.

"Every disposition by which the donee, the heir, or legatee is charged to preserve for or return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee."

"Substitution," with respect to wills, is defined by Bouvier (Rawle's Revision) vol. 2, p. 1061, as follows:

"The putting of one person in place of another, so that he may, in default of ability in the former, or after him, have the benefit of a devise or legacy. * * * Fidei commissary substitution is that which takes place when the person substituted is not to receive the legacy after the first legatee, and consequently must receive the thing bequeathed from the hands of the latter."

The same authority (volume 1, p. 779), defines a "fidei commissum" as:

"A trust. A devise was made to some person (hæres fiduciarius) and a request annexed that he should give the property to some one who was incapable of taking directly under the will."

Black's Law Dictionary defines the term "substitution," as applied to wills, as follows:

"The putting one person in place of another: particularly the act of a testator in naming a second devisee or legatee who is to take the bequest either on failure of the original devisee or legatee, or after him."

And a "fidei commissum" as:

"A species of trust, being a gift of property (usually by will) to a person, accompanied by

a request or direction of the donor that the recipient will transfer the property to another, the latter being a person not capable of taking under the will or gift."

The second paragraph of the article of the Code (1520) itself, in effect gives practically the same meaning to the term "fidei commissum," when it says:

"Every disposition by which the *donee*, the heir or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee."

[3] So that, to be amenable to the prohibitions of the law, the bequest must be to the donee, and, at his death or at the end of a fixed or determinable time, to a third person, which, if permissible beyond the first donee, would give the testator the power to tie up the title ad infinitum, and thereby take it out of commerce; or the bequest must be made to one in trust for another, with request or direction to preserve and return it to such third person, which would permit a donor to do indirectly that which he could not do directly, and that is, transmit by will or donation inter vivos to a person prohibited from receiving of him by law, through the medium of a trustee or third person.

[4] Is there anything in either of the clauses of the will attacked and quoted above which does or has the effect of doing the the things prohibited? We think not. The will, after making certain bequests, gives to the sister of deceased "the usufruct of all that I die possessed of," and directs the converting of all of the testator's property into cash, and the placing of the funds at interest. Realizing that the interest might not be sufficient for the support of his sister, he then authorizes her to withdraw the sum of $40 per month, and to include enough of the capital to make up that amount monthly. Lastly, he gives to his niece and godchild the residue of the principal or capital, if any remains after the death of his sister. He did not give to the sister any part of the principal, except so much thereof as was necessary, with the interest, to make the sum of $40 per month; nor was the sister charged with preserving and returning to Mrs. Willoz the part that was vested in her through the monthly withdrawals. By the same act he vested in the latter at the moment of his death the naked ownership of whatever might remain at the death of his sister. In the one case the entire principal might be consumed by the sister, on condition that she live long enough to consume it; and, for the same reason, this imposed a condition on the bequest to the niece which might defeat it altogether. On the other hand, if the other condition or contingency of the sister's death happened before the principal was exhausted, her (the sister's) right or title to the remainder would never become vested; and that condition would immediately render perfect the title of the niece.

It must be borne in mind that what is known as the "vulgar substitution" is not prohibited by our law, as appears from article 1521 of the Revised Civil Code:

"The disposition, by which a third person is called to take the gift, the inheritance or the legacy, in case the donee, the heir or the legatee does not take it, shall not be considered a substitution and shall be valid."

The testator might name a dozen legatees, to take successively, each in case of the death or default of the other before the falling of the bequest. In effect, that was all that was done as to any part of the capital which might remain at the death of Miss Emma Marie Courtin in this case. Bernard v. Goldenbow, 18 La. 95; Bernar v. Soule, 18 La. 21; Roy v. Latiolas, 5 La. Ann. 552; Succession of Hudson, 19 La. Ann. 79; Succession of Michon, 30 La. Ann. 213; In re Billis' Will, 122 La. 543, 47 South. 884, 129 Am. St. Rep. 355; Steeg v. Leopold, 126 La. 101, 52 South. 232; Fisk v. Fisk, 3 La. Ann. 494; Succession of Barker, 10 La. Ann. 28;

Succession of Shaffer, 50 La. Ann. 601, 23 South. 739.

[5] It is well settled that a testator may give the usufruct to one person and the naked ownership to another, without violating the provisions of article 1520 of the civil Code. R. C. C. 1522. That was exactly what was done here, except that the usufructuary was given the further right to draw upon the capital to supplement the revenues in an amount sufficient each month to make the sum of $40. She was not given the property or funds in complete ownership, and at her death the same property or funds to the decedent's niece; nor was the former charged with the duty of preserving and returning anything to the latter.

[6] Plaintiffs further contend that the will requires the executor to remain in office, to collect and invest the funds, and to pay over to the usufructuary the amounts provided under the will, during her lifetime, and at her death to pay over the remainder to Mrs. Willoz; a function and a tenure not only not contemplated, but prohibited, by our law. However, this cannot be so; for the usufruct of money constitutes what is known under the Code as an imperfect usufruct, and entitles the usufructuary to use and spend it, with the obligation only to restore a like amount at the end of the usufruct. R. C. C. 533, 534, 536, 549. Article 557 et seq. prescribes the obligations of the usufructuary, and requires that security shall be given, unless dispensed with by the owner; and article 563 provides that, if such security be not given with respect to money, the same shall be invested as follows:

"Sums of money, the usufruct of which has been given, shall be put out at interest on good security, with the consent of the owner, and if he refuse, by the authority of the judge. * * *

"The interest of such sums, the amount of the rent of the immovables and the products of the sequestered property shall, in such case, belong to the usufructuary."

In view of these provisions, what occasion would there have been for the executor to remain in office any longer than was necessary to convert the assets of the estate into cash, discharge the special legacies, and to cite the usufructuary and universal legatee into court for the delivery thereof, and his discharge according to law? He was not concerned as to whether or not Mrs. Willoz should exact security, as that was not required under the will; and, in fact, she and the usufructuary promptly entered into an agreement adjusting matters as between themselves, as is permitted by the Code, and had a judgment of court rendered, by consent, sending them into possession pursuant to that settlement.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.