Taft, J.
In the instant case, the values shown in the taxpayer’s annual corporation reports for the years 1944 to 1947, inclusive, for the amounts of its capital, surplus, undivided profits and reserves were those recorded in the general ledger accounts of the taxpayer in the ordinary course of its business and were accepted and used by the taxpayer as the basis for all its financial and earnings reports to its stockholders, to banks for credit purposes, to government regulatory bodies, and to the federal and state governments for tax purposes. No evidence was offered tending to prove the taxpayer had in any way falsified the amounts recorded in those accounts or that the asset values shown therein were not in fact what they purport to be.
Furthermore, r it is conceded that the valuations shown for inventories on the taxpayer’s books were accurately determined by following a recognized method of inventory accounting known as the last-in first- *103 out or Lifo method; and that this method of accounting had been adopted by the taxpayer and consistently and accurately followed and used by the taxpayer in the ordinary course of its business for several years. In such an instance, the Tax Commissioner must find these annual corporation reports of the taxpayer, so far as they require statements of amounts and values as shown by its books, “to be correct.” Then, under Section 5498, General Code, the Tax Commissioner must determine that “the value of the issued and outstanding shares of stock” of the taxpayer is an amount equal to what the statute says it “shall be deemed to be,” — that is, “the total value of its capital, surplus * * * undivided profits and reserves” as stated in those reports, exclusive of any of the items specified in subdivisions (a) to (d) of the statute, which are properly claimed and established as deductions from such value. See Jacob B. Perkins Co. v. Glander, Tax Commr., 153 Ohio St., 501, 92 N. E. (2d), 690.
None of the provisions of Section 5498, General Code, which expressly authorize adjustments with respect to certain balance-sheet items, purport to authorize the commissioner to increase the amount of any balance-sheet asset items, as reported by a corporation in its annual corporation report, in the event that the Tax Commissioner shall “find such [annual corporation] report to be correct,” i. e., a report in accordance with the requirements of Sections 5495-2, 5496 and 5497, General Code, as the report of taxpayer was in the instant case. To imply such a power would be to construe a taxing statute against the taxpayer instead of in favor of the taxpayer.
Furthermore, the General Assembly having expressly conferred authority on the Tax Commissioner to decrease the book value of assets in certain. instances, where such book value exceeds fair value, the rule of *104 expressio unius est exclusio alterius requires a conclusion against any implication of a power to increase the book value of assets in other instances.
The Tax Commissioner recognizes that the statute (Section 5498, General Code) provides for “book value” but cites several authorities which curiously seem to regard “book value” as always synonymous with “market value,” such as Townsend v. LaCrosse Trailer Corp., 254 Wis., 31, 35 N. W. (2d), 325; Steeg v. Leopold Weil Bldg. & Improvement Co., 126 La., 101, 52 S., 232; Southwestern Light & Power Co. v. Oklahoma Tax Comm., 178 Okla., 277, 62 P. (2d), 637; Wineinger v. Kay (Tex. Civ. App.), 58 S. W. (2d), 876; and 9 Corpus Juris, 138.
However, paragraph nine of the syllabus in Opdyke v. Security Savings & Loan Co., 157 Ohio St., 121, 105 N. E. (2d), 9, reads:
“The book value of an asset at any given time may be more or less than its value; and the book value of shares of stock may therefore be more or less than the value of such shares.”
The reasons why book value and market value are not necessarily or even ordinarily the same are set forth in the opinion in that case at pages 148, 149 and 150.
If the Tax Commissioner’s contention in this respect were sustained, he would, in determining the amount of corporate franchise taxes, be authorized to reappraise each year all the assets of every corporation filing an annual corporation report. Such a contention might have had some merit before 1927 when Section 5498 (111 Ohio Laws, 471, 473) read in part:
“* * * The Tax Commission * * * shall * * * determine the amount of the fair value on an asset basis of the capital stock of every domestic corporation * * * and the proportionate amount of the fair value on an *105 asset basis of the capital stock of every foreign cor-portion * *
It was undoubtedly to do away with the tremendous amount of work, which would be involved in reappraising each year all the assets of every corporation, that the General Assembly amended Section 5498 to provide that book value, except as it might in certain specified instances be shown to be excessive, should be the basis for assessment of the corporation franchise tax.
It is also significant that the statutes with regard to listing personal property for taxation do expressly provide, unlike Section 5498, General Code, for authority in the tax assessor to increase as well as decrease the book value of property.
Thus, Section 5388, General Code, reads in part: “Personal property of the following kinds, used in business, shall be listed and assessed at fifty per centum of the true value thereof, in money * * V’
Section 5389, General Code, reads in part:
“In the ease of personal property used in business, the book value thereof, if any, less hook depreciation, at such time or times, shall be listed and such depreciated book value shall be taken to be the true value of such property, unless the assessor shall find that such depreciated book value is greater or less than the then true value of such property in money * * V’
Because of the foregoing provisions with regard to personal property taxes, it is necessary for this taxpayer to keep some records which will reflect the actual value of its inventory at a given time. However, these records are not used as a basis of making up financial and earnings reports to stockholders or otlirrs to whom such reports must or may he submitted; although, of course, they may be useful in determining costs for the purpose of fixing prices to be charged to customers. It is the contention of the Tax Commis *106 sioner that, since such records do exist, they are a part of the books of the corporation and should be used in determining book value. In our opinion, the unsoundness of this contention is clearly demonstrated by the syllabus in Wheeling Steel Corp. v. Evatt, Tax Commr., 143 Ohio St., 71, 54 N. E. (2d), 132, which reads in part:
“1. Where a taxpayer made an appraisal of its machinery and other factory equipment but did not change its bookkeeping records in accordance with such appraisal, a tax return based upon such appraisal does not reflect ‘book value’ or ‘book depreciation’ or ‘depreciated book value’ of such personal property, within the meaning of those terms as used in Section 5389, General Code.
“2. Book value of personal property, as used in Section 5389, General Code, is to be obtained from a capital account set up on the books of the taxpayer in the ordinary course of business wherein are recorded the costs of such personal property.
“3. Book depreciation as used in Section 5389, General Code, is to be obtained from the taxpayer’s depreciation account set up in the ordinary course of business upon the books of the taxpayer and which account is regularly and consistently credited with depreciation under some generally recognized method of reflecting depreciation of the taxpayer’s personal property. ’ ’
It may be further observed that there is no statutory provision specifying the manner in which the books of a corporation must be kept. In the absence of any such statute, book value should be determined under Sections 5497 and 5498, General Code, from books which were generally regarded as the accounting records of such corporation and were kept in the ordinary course of business in accordance with any sound and generally recognized and approved accounting *107 system, as the taxpayer’s books in the instant ease admittedly were. See Kloepfer’s, Inc., v. Peck, Tax Commr., 158 Ohio St., 577, 581.
The Tax Commissioner further contends in effect that if, as a result of the accounting system followed by a taxpayer, the book value of the taxpayer’s shares is less than their fair value and- the commissioner is denied authority to raise such book value to fair value, then other taxpayers within the same class, whose book values are equal to the fair value of their shares, are denied equal protection of the laws.
In our opinion there is no merit to this contention. As stated in the opinion by Mr. Justice Stone in Lawrence v. State Tax Comm. of Mississippi, 286 U. S., 276, 284, 76 L. Ed., 1102, 52 S. Ct., 556, 87 A. L. R., 374: “The equal protection clause does not require the state to maintain a rigid rule of equal taxation, to resort to close distinctions, or to maintain a precise scientific uniformity; and possible differences in tax burdens not shown to be substantial or which are based on discriminations not shown to be arbitrary or capricious, do not fall within constitutional prohibitions.”
The decision of the Board of Tax Appeals, being both reasonable and lawful, is affirmed.

Decision affirmed.

Middleton, Matthias, Hart and Stewart, JJ., concur.
Weygandt, C. J., and Zimmerman, J., dissent.